UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HARRISON BURTON,

    Plaintiff,

v.

J. CHENOWETH,

    Defendant.

No. 2:14-cv-2331 KJN P

ORDER

    Plaintiff is a state prisoner, proceeding without counsel. Plaintiff consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. Plaintiff's amended complaint is now before the court.

    The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

    A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

1 Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an
2 indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke,
3 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully
4 pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th
5 Cir. 1989); Franklin, 745 F.2d at 1227.

6 A complaint, or portion thereof, should only be dismissed for failure to state a claim upon
7 which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in
8 support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467
9 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt
10 Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under
11 this standard, the court must accept as true the allegations of the complaint in question, Hosp.
12 Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light
13 most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v.
14 McKeithen, 395 U.S. 411, 421 (1969).

15 Here, it appears that plaintiff alleges that correctional officer Chenoweth retaliated against
16 plaintiff "as a result of [plaintiff's] exercise of rights of access to court," . . . "of filing lawsuits
17 and inmate appeals." (ECF No. 20 at 8.) Plaintiff then provides a laundry list of incidents.

18   A. Legal Standards

19 Retaliation by a state actor for the exercise of a constitutional right is actionable under
20 § 1983 even if the act would have been proper or justified under different circumstances. See Mt.
21 Healthy City Bd. of Education v. Doyle, 429 U.S. 274, 283-84 (1977). In the prison context, a
22 plaintiff alleging unconstitutional retaliation must show: (1) that a state actor took some adverse
23 action against him (2) because of (3) the prisoner's protected conduct, and that such action (4)
24 chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably
25 advance a legitimate correctional goal. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009);
26 Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). It is well established that "[p]risoners
27 have a First Amendment right to file grievances against prison officials and to be free from
28 retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); see also Silva

1   v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011) (prisoners retain First Amendment rights not
2   inconsistent with their prisoner status or penological objectives, including the right to file inmate
3   appeals and the right to pursue civil rights litigation).
4       Retaliation claims brought by prisoners must be evaluated in light of concerns over
5   "excessive judicial involvement in day-to-day prison management, which 'often squander[s]
6   judicial resources with little offsetting benefit to anyone.'" Pratt v. Rowland, 65 F.3d 802, 807
7   (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  In particular, courts
8   should "'afford appropriate deference and flexibility' to prison officials in the evaluation of
9   proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. (quoting
10  Sandin, 515 U.S. at 482).
11      However, not every incident rises to the level of retaliation.  In Rhodes, the Ninth Circuit
12  cited a list of cases involving incidents that did rise to the level of retaliation:

> Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that "repeated threats of transfer because of [the plaintiff's] complaints about the administration of the [prison] library" were sufficient to ground a retaliation claim); Hines, 108 F.3d at 269 (holding that the retaliatory imposition of a ten-day period of confinement and loss of television -- justified by a correctional officer's false allegation that the plaintiff breached prison regulations -- violated the First Amendment); Pratt, 65 F.3d at 807 ("[I]t would be illegal for [corrections] officials to transfer and double-cell [plaintiff] solely in retaliation for his exercise of protected First Amendment rights."); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that, if correctional officers indeed called plaintiff a "snitch" in front of other prisoners in retaliation for his filing grievances, it would violate the First Amendment).

21  Rhodes, 408 F.3d at 568.  In claims brought by inmates alleging retaliation, the plaintiff "bears
22  the burden of pleading and proving the absence of legitimate correctional goals for the conduct of
23  which he complains." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).
24      B. Plaintiff's Incidents
25      Plaintiff sets forth eight separate incidents, but as to each incident, fails to address the five
26  elements of a retaliation claim as required under Brodheim.  Thus, it is unclear whether plaintiff
27  recites the incidents in an effort to demonstrate that defendant Chenoweth retaliated against
28  plaintiff on each specific occasion, or whether plaintiff alleges that this chronology of events

3

demonstrates that defendant retaliated against plaintiff. In an abundance of caution, the court will address each incident, and then address whether plaintiff has stated a claim based on a chronology of events.

In the June 16, 2011 incident, plaintiff alleges that the law librarian technical assistant ("L.T.A.") called defendant Chenoweth to escort plaintiff from the library based on a dispute concerning the payment for photocopies. Defendant Chenoweth simply escorted plaintiff from the library, which advanced a legitimate correctional goal. Plaintiff alleges no facts demonstrating that Chenoweth acted in retaliation based on plaintiff's conduct protected under the First Amendment. Although defendant Chenoweth escorted plaintiff from the library, such action was ordered by the L.T.A., not initiated by defendant.

Plaintiff claims that on June 17, 2011, plaintiff was denied law library access from June 16, 2011, until February 24, 2012. (ECF No. 20 at 9.) However, it appears that Lt. Guimond banned plaintiff from the library "because L.T.A. Davis had a constitutional right to be safe." (ECF No. 20 at 9.) Such adverse action advances a legitimate correctional goal. Moreover, it appears that defendant Chenoweth's role during the June 17, 2011 events, was to verbally comment on plaintiff's actions in the library, based on plaintiff's dispute with the L.T.A., and not to issue the alleged library ban. Absent facts connecting an adverse action to defendant, such alleged verbal harassment is insufficient to state a cognizable civil rights claim. Plaintiff alleges that defendant Chenoweth told plaintiff that he is "a big nuisance," and verbally threatened to issue a rules violation against plaintiff if he returned to the library; however, if plaintiff was legitimately banned from the library due to his conflict with L.T.A. Davis, plaintiff was not permitted to attend the library. (ECF No. 20 at 10.) If plaintiff was banned from the library, what plaintiff considers a verbal threat could be construed as a legitimate warning that plaintiff would be issued a rules violation for violating such an order, which constitutes a legitimate correctional action. Moreover, despite providing numerous exhibits, plaintiff did not provide a copy of any written document banning him from the library. (ECF No. 20, *passim*.) Plaintiff's citation to the Lassen County Superior Court's February 24, 2012 order does not address such a ban, but rather ordered HDSP to facilitate his law library access and legal materials "so that he may participate in

the case as required." (ECF No. 20 at 60.)  In addition, plaintiff's allegations concerning the June 17, 2011 incident also fail to state an access to the courts claim because plaintiff alleges no facts demonstrating an actual injury was suffered during the deprivation.  Plaintiff must show "actual prejudice to contemplated or existing litigation" by being shut out of court.  Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis v. Casey, 518 U.S. 343, 348, 351 (1996); Christopher v. Harbury, 536 U.S. 403, 415 (2002); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

Subsequently, plaintiff had the Lassen County Sheriff's office serve defendant, and others, on March 29, 2012, with a subpoena in his Lassen County Superior Court case for a hearing to be held on statements made by defendant Chenoweth on June 17, 2011.  (ECF No. 20 at 10.) However, the proof of service provided by plaintiff reflects that the deposition subpoena was served on Sgt. Guy Nuchols, not personally served on defendant Chenoweth.  (ECF No. 20 at 48.) In addition, public court records reflect that plaintiff sued only L.T.A. C. Davis in the Lassen County Superior Court Case No. 54414.[1]  L.T.A. Davis objected to the subpoena, including the subpoena served on Chenoweth.  (ECF No. 20 at 46-47.)  Moreover, on January 14, 2016, the Court of Appeal for the Third District of California affirmed the Lassen County Superior Court's grant of summary judgment to L.T.A. Davis, noting that

> the trial court concluded that the undisputed facts submitted in support of the motion showed Davis never denied Burton physical access to the law library; never denied Burton access to the courts in violation of his First Amendment rights; and never banned Burton from the law library. The court also found that, in discharging her library responsibilities, Davis acted in compliance with the California Code of Regulations, the "Department Operations Manual," and the "High Desert State Prison Operations Manual Supplement." Summary judgment was granted in this case because Burton failed to refute Davis's significant evidentiary showing that his claims were without foundation, and failed to demonstrate the existence of a triable issue of material fact.

---

[1] The Superior Court of California, County of Lassen, Online Services, http://www.lassencourt.ca.gov/online_services/casesearch.shtml, accessed March 2, 2016.  A court may take judicial notice of court records.  See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

Burton v. Davis, C072451, *4 (Cal. App. 3 Jan. 14, 2016). Plaintiff fails to demonstrate that defendant Chenoweth was aware of this lawsuit. Absent factual allegations reflecting that defendant Chenoweth took adverse actions against plaintiff based on Case No. 54414, plaintiff fails to demonstrate that defendant retaliated against plaintiff based on his protected conduct in litigating Case No. 54414.

On June 26, 2012, plaintiff claims that defendant Chenoweth improperly searched plaintiff during a routine pat down search upon plaintiff's completion of a scheduled law library session. (ECF No. 20 at 10.) Although plaintiff claims he turned around and told defendant that plaintiff was going to write him up for sexual misconduct, plaintiff fails to identify what protected conduct plaintiff was engaged in that allegedly prompted defendant's actions. Indeed, plaintiff states that defendant was "doing a routine pat down." (ECF No. 20 at 10.) Plaintiff's reference to the subpoena in Case No. 54414 fails to reflect defendant's personal knowledge of the case and is too remote in time to connect to defendant's actions on June 26, 2012. Court records confirm that such action named L.T.A. Davis as a defendant, not Chenoweth. In addition, defendant was engaged in a legitimate correctional activity of patting down plaintiff for security reasons.[2]

////

---

[2] Inmate sexual harassment claims that allege brief inappropriate touching by a correctional official are generally found to be noncognizable, particularly if the alleged touching occurred pursuant to an authorized search. "Even if plaintiff believed that there was a sexual aspect to the search, more is needed." Smith v. Los Angeles County, 2010 WL 2569232, *5 (C.D. Cal. 2010); adopted by 2010 WL 2572570 (C.D. Cal. 2010); aff'd, 452 Fed. Appx. 768 (9th Cir. 2011) (pretrial detainee failed to state Fourteenth Amendment due process claim, or Fourth Amendment unreasonable search claim, based on plaintiff's allegations that defendant correctional officer, pursuant to a search and without sexual comment, pulled plaintiff's boxers to look at his buttocks, inserted his hand "karate chop" style, into "the cavity of my buttocks . . . until it passed between my legs and reached under and around until he cupped by genitals," id. at *4); citing Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998) (affirming summary judgment for defendant on plaintiff's Eighth Amendment claim that prison employee's brief touch ("mere seconds") to plaintiff's buttocks during "horseplay," unaccompanied by sexual comments, was an improper sexual advance that "embarrassed" plaintiff ); and Osterloth v. Hopwood, 2006 WL 3337505, *6, *7 (D. Mont. 2006) (dismissing Eighth Amendment claim challenging as sexually abusive an officer's search of plaintiff that allegedly included the officer reaching between plaintiff's legs, grabbing his scrotum and penis, and sliding his hand between plaintiff's buttocks, wherein plaintiff stated to the officer, "that was pretty much sexual assault," and officer responded, "yah pretty much.").

Plaintiff also renews his claim that on June 26, 2012, upon leaving the chow hall, defendant Chenoweth allegedly began pepper-spraying plaintiff for no reason. But plaintiff again fails to connect defendant's actions with conduct protected under the First Amendment, rather than out of fear for his own safety. (See ECF No. 19 at 3.) Plaintiff fails to provide additional factual allegations that would demonstrate that Chenoweth's actions on June 26, 2012, were retaliatory in nature. Moreover, because plaintiff has alleged no additional facts to demonstrate otherwise, it appears that such retaliation claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641, 648 (1997), as explained in this court's December 2, 2015 order. (ECF No. 19 at 5-8.) Moreover, plaintiff is seeking reversal of the guilty finding through a petition for writ of habeas corpus in Burton v. Paramo, Case No. 2:14-cv-2602 WBS CMK (E.D. Cal.). (ECF No. 19 at 3.) If and when the guilty finding is reversed, plaintiff may bring his civil rights action raising his excessive force and retaliation claims against defendant.

Plaintiff alleges that on October 10, 2012, defendant Chenoweth stood in front of plaintiff's door and loudly claimed plaintiff refused his tray, then started laughing. (ECF No. 20 at 11.) Plaintiff claims the prison was on lockdown and he did not refuse a tray. On December 18, 2012, plaintiff claims that while he was running on the track during yard, defendant pointed his finger at plaintiff whenever he passed by, then defendant started laughing very loudly, walked to the edge of the track and "began giving hard looks." (ECF No. 20 at 11.) On December 21, 2012, defendant came into the housing unit making loud noises and kicking the food cart, and when he came to plaintiff's housing unit, said to plaintiff, "What's your phone number 'Big Boy?'" (ECF No. 20 at 11.) On December 24, 2012, defendant was very disruptive, kicking the food cart and being very loud. However, none of these allegations, even if true, rise to the level of an adverse action or a constitutional violation. Allegations of unprofessional conduct and harassment are not cognizable under section 1983. (ECF No. 19 at 6.)

Finally, plaintiff claims that on December 26, 2012, defendant denied plaintiff a food tray, but that Correctional Officer Courtney gave plaintiff a food tray. (ECF No. 20 at 11.) Again, plaintiff fails to allege facts connecting defendant's actions on December 26, 2012, to plaintiff's conduct protected under the First Amendment.

Thus, it appears that plaintiff's factual allegations are insufficient to plead a causal connection between any specific adverse action taken by defendant and any protected conduct by plaintiff, and plaintiff fails to allege a chronology of events that plausibly supports a claim that defendant acted with a retaliatory motive in response to plaintiff's protected conduct.  Plaintiff fails to set forth a simple, concise, and direct statement of each claimed retaliatory action, and the alleged causal connection between any adverse action and any specific protected conduct is thus unclear.  To the extent that plaintiff is purporting to allege that defendant acted in retaliation against plaintiff because of specific conduct that is constitutionally protected, plaintiff must set forth a short and plain statement of each such purported claim for retaliation.

Accordingly, plaintiff's amended complaint is dismissed.  It is unclear whether plaintiff can amend to allege facts demonstrating that defendant retaliated against plaintiff.  However, in an abundance of caution, plaintiff is granted one final opportunity to file a second amended complaint.

If plaintiff chooses to file a second amended complaint, plaintiff must plead sufficient facts for the court to find it plausible that defendant retaliated against him in violation of the First Amendment.  See Iqbal, 556 U.S. at 681.  Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's federal constitutional or statutory rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the second amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This requirement is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v.

1  Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a second amended complaint, the
2  original pleading no longer serves any function in the case.  Therefore, in a second amended
3  complaint, as in an original complaint, each claim and the involvement of each defendant must be
4  sufficiently alleged.
5        Finally, nothing in this order requires plaintiff to file a second amended complaint.  If
6  plaintiff determines that he is unable to amend his complaint in compliance with the court's order
7  at this time, he may alternatively file a notice of voluntary dismissal of his claims without
8  prejudice pursuant to Federal Rule of Civil Procedure 41(a) within thirty days of this order.
9        In accordance with the above, IT IS HEREBY ORDERED that:
10       1.  Plaintiff's amended complaint is dismissed; and
11       2.  Plaintiff is granted thirty days from the date of service of this order to file a second
12  amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules
13  of Civil Procedure, and the Local Rules of Practice; the second amended complaint must bear the
14  docket number assigned this case and must be labeled "Second Amended Complaint"; plaintiff
15  must file an original and two copies of the second amended complaint.
16       Failure to file a second amended complaint in accordance with this order will result in a
17  recommendation that this action be dismissed.
18  Dated:  March 4, 2016

_/s/ Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

burt2331.14am